**UNITED STATES of America, Plaintiff,**

v.

**John H. MEIER, Defendant.**

**No. Cr. 78–00075.**

United States District Court,
D. Utah, C. D.

Jan. 30, 1980.

---

**1130**

Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff.

James N. Barber, Barber, Verhoef & Yocom, Salt Lake City, Utah, for defendant.

MEMORANDUM OPINION and ORDER

JENKINS, District Judge.

This matter was tried to a jury beginning July 25, 1979 on a single count charging defendant with obstruction of justice by knowingly submitting two false documents to a United States District Court in a civil matter in which defendant was a litigant.

At the time of trial, defendant elected to stand mute and did not testify. The jury convicted.

A Motion for Judgment of Acquittal, a Motion in Arrest of Judgment and a Motion for a New Trial were filed post conviction, briefed and argued by counsel and considered by the court. The court denied each motion. Sentence was imposed August 24, 1979.

A notice of appeal was filed by defendant.

Defendant chose not to pursue his appeal. The appeal was dismissed by the Court of Appeals October 23, 1979.

Defendant has now filed a second motion for a *new trial* asserting as a basis therefor (1) newly discovered evidence and (2) failure of the Government "to disclose evidence favorable to the defendant in the Government's control prior to the trial."

The "evidence" claimed to be newly discovered consists of micro-films of documents, made in Mexico by the Internal Revenue Service in May of 1976, which documents were then in the possession of Mexican authorities. The micro-films have been in the possession of the Internal Revenue Service until a few weeks ago, when they came into possession of the U.S. Attorney and were examined by defendant's attorney.

Defendant asserts that the I.R.S. micro-films "provide convincing evidence that the fabricated documents were most likely present in the Hughes' papers in October, 1976, where they were photocopied by and delivered to Terri Trevillion in Mexico, and not inserted into the documents after they were turned over to John Meier in Canada."

When defendant speaks of the "fabricated documents", he speaks of more than the two documents which were involved in the count for which defendant was convicted. He does include these two documents in his larger category of fabricated documents.

First, it should be made plain that those matters which were considered at the time post conviction motions were filed and denied, and those matters which could have been addressed on appeal and were not, are *not* before this court at this time.

The only questions with which the court is concerned are whether alleged "newly discovered evidence" justifies a re-trial of

this matter, and whether the United States failed to disclose "exculpatory" evidence in its possession.

It is asserted that the I.R.S. micro-films, the "newly discovered evidence", were withheld by the United States from defendant after request for their production.

Neither the attorney for the United States nor the attorney for the defendant examined the "micro-films" prior to trial although each knew of their existence in the possession of the I.R.S. prior to trial. Each was unaware of their contents.

The "evidence" was not in the possession of the prosecutor. What was available to the prosecutor was made available to the attorney for the defendant in accordance with the "open file policy" extant in this District and the Order of the Court heretofore entered—both designed to insure disclosure and a fair trial.

Neither counsel asked this court for an order prior to trial seeking to have the I.R.S. disgorge or produce them. They were never subpoenaed by either party.

Neither party asked this court for a continuance to enable one party or the other to obtain access to the micro-films and to examine the same.

█ A Motion for a New Trial is directed to the sound discretion of the court. Rule 33 F.R.Cr.P.; *Wion v. United States,* 337 F.2d 230 at 231 (10 Cir. 1964).

On infrequent occasions, the relief sought rises to a matter of right and denial thereof is characterized as an abuse of discretion and a denial of a constitutional right to due process. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

█ Such can occur when a material and important matter *is intentionally* or inadvertently withheld—indeed suppressed—by the United States. The test in such an instance relates in part to the degree of culpability of the United States and a new trial, if granted, is granted not just in the interest of fairness to the defendant (the usual concern) but also for a second reason—to provide incentive to the United States to refrain from the practice of intentionally withholding exculpatory matter from a defendant after request.

█ That rule, while urged on the court by defendant, is in no sense applicable to the facts of this case. Open file policy there was. Suppression there was not. Defendant has made no showing that the prosecutor had any greater access to the documents than he. However, the usual and ordinary rule is applicable. It is well stated in *Wion, supra* at 231, as follows:

"[1] The defendant in a criminal case is not entitled to a new trial on the ground of newly discovered evidence unless that evidence was discovered after the trial and the defendant exercised diligence prior to trial; that the evidence is material to the issues involved and not merely cumulative or impeaching; and that on a new trial the newly discovered would probably produce an acquittal. *Ferina v. United States,* 8 Cir., 302 F.2d 95, cert. denied *Cardarella v. United States,* 371 U.S. 819, 83 S.Ct. 35, 9 L.Ed.2d 59; *Connelly v. United States,* 8 Cir., 271 F.2d 333, cert. denied *Caudle v. United States,* 362 U.S. 936, 80 S.Ct. 755, 4 L.Ed.2d 750; *Long v. United States,* 10 Cir., 139 F.2d 652; *Johnson v. United States,* 8 Cir., 32 F.2d 127."

Were the micro-films discovered after trial? They were not.

Ignoring the question of diligence, is the evidence material to the issues involved and not merely cumulative or impeaching?

What is the evidence and what is newly found, if anything, in the micro-films?

Defendant was desirous of obtaining copies of documents, relating to the last 2 years of activity by Howard Hughes, which had been sequestered by the Mexican authorities shortly after Hughes died.

Defendant was then engaged in prolonged civil litigation dating from 1972 wherein Hughes Tool Co. was suing him for some 7 million dollars alleging double dealing on his part while employed by Hughes Tool Co.

In October, 1976, Terri Trevillion, a Canadian accountant, at defendant's instance and through the grace of John Reynolds, Canadian M.P. and the Canadian Embassy, obtained access to papers in the possession of the Mexican authorities—papers John Meier wanted. The effort to acquire papers was started by Meier, not the Canadian M.P. (Tr. Vol. 11–A, P. 59, line 18).

Acquisition was by Meier's courier—Terri Trevillion—whom he introduced to the Canadian M.P., who armed her with status by a letter on his official stationery.

The October copies obtained by her, (about 80% of what was there), part of which were copies of copies, and part of which were "extra" copies the Mexican authorities gave to her, were caused to be packaged by her in a large box on October 21, 1976 in Mexico (after previously being numbered and stamped), and that same day delivered by her to the office of John Reynolds, M.P. in Vancouver, B.C. The very next day, October 22, in the presence of John Meier, the package was opened, and after a brief glance by John Reynolds, the package and all of its contents—including a self-advancing sequence stamp, a stamp "H.H.", and an ultra-violet (invisible) stamping pad were delivered to John Meier. He then had the papers he wanted. (Tr. Vol. 11–A, p. 62, line 16).

That same day, October 22, 1976, Terri Trevillion delivered to John Reynolds an inventory of the documents in the box. (Exhibit 14) (Tr. Vol. 11–A, pp. 40–41).

Almost two seeks later, John Reynolds M.P. sent a letter to Meier from Ottawa (not Vancouver) which reads as follows:

November 4, 1976

Mr. John Meier
360 English Bluff Road
Delta, B.C.

Dear John:

As you are aware, Miss Torvillion has visited Mexico to review the files of Howard Hughes that were left behind when he passed away.

Miss Torvillion was given permission by the Mexican Government to review the files and she returned with 3,428 xerox copies that are numbered consecutively. I have reviewed these documents and find no relevant information for the cases that I am working on. In view of this I am forwarding the files to you for your review in case there is something that may be relevant to your case in the United States.

Kindest personal regards.

Yours sincerely,

/s/ John

John Reynolds, M.P.

The following day, November 5, 1976, Meier air expressed to his attorney a number of documents including the two false documents (exhibits 3 and 4), and on the 10th day of November, 1976 the two documents were placed by his attorney in the record in the pending seven million dollar civil suit then in process against Meier. (Def. Exhibit I and its contents; P. Exhibit # 15.)

At the time they were mailed he expressed his purpose to a journalist companion and friend, one R. Robinson—to "confuse the court." (Tr. Vol. 1, pp. 90 and 106).

Counsel for defendant suggests that the I.R.S. micro-films, the "newly discovered evidence", provide "convincing proof" that the two offensive documents, among others, were present in Mexico and were brought back from Mexico and given to Meier. If true, this would contradict the government's theory of the case that the false documents were manufactured while the Trevillion copies were in Meier's possession. Exhibit 4, one of the documents now acknowledged by all to be forged reads as follows:

From: Howard

Re: Meier

June 21, 1974

HRH wants you to drop the pressure on Meier and Greenspun. You told him that this was done and he has found out otherwise. He says that Greenspun has had enough and Meier was entitled to money he had received because HRH had agreed to it. He does not want a big noise about this but says it is to be a priority matter now.

Please handle.

/s/ Howard R. Hughes

That document is not found in the I.R.S. micro-films taken of some of the Hughes papers in May of 1976. It is simply not there. If it were, then defendant's motion might have merit.

Not only is it not present in the micro-films, it was apparently not present in the Originals in September, 1976 when they were sent by the Mexican Government to the law office of Chester Davis in New York and kept secure by his personal secretary, Mrs. Ruth Polansky. The originals were examined by her. Exhibit 4 was not found among them.

Exhibit 3, one of the offensive documents, also is not found in the I.R.S. micro-films. This is acknowledged by defendant. Thus, the "words" on such exhibit referring to a purported signature of Howard R. Hughes, "No good, cannot use, Levar." do not appear in the I.R.S. micro-films. These words and the signature to which they point are now acknowledged by all to be neither the words nor the signature of Levar Myler, an aide of Mr. Hughes, nor the signature of Mr. Hughes.

What then, if anything, do the micro-films add by way of evidence that the defendant did not already have at the time of trial?

He already had the copies of the documents brought from Mexico by Terri Trevillion. Indeed he exhibited two file drawers of documents to Ms. Trevillion at the time of trial.

Some of the documents which appear in the micro-films also appear as documents introduced in evidence. Some of them have blemishes on their face similar to some blemishes on the two offensive documents.

The response of course is, so what? All of the documents defendant claims are "fabricated" were available to defendant at the time of trial.

Exhibits 2 and 3 are two sheets of a two-page document. They bear notation on the back of numbers 000330 and 000331.

The quality of paper of 2 and 3 when viewed in sequence under ultra-violet light with papers bearing numbers 000324 thru 000337 (exhibit 15) is purple in color and radically different from the surrounding papers of Exhibit 15 which are pink in color.

The sequential numbers 000330 and 000331 on Exhibits 2 and 3 were, according to the experts, also different from comparable numbers on surrounding papers demonstrating that they were made with the same stamp—but stamped at a different time.

According to the experts, the same was true of Exhibit 4—the dorsal number 000825 appeared different from surrounding documents.

Thus the physical evidence, according to the experts, indicated that the sequence stamps on the backside of Exhibits 2 and 3 and 4 appeared to have been placed there at a time different than those on surrounding documents. However the testimony of Ms. Trevillion was that Ms. Trevillion sequentially stamped the copies *she* made of the genuine documents, and that these copies and the stamping device were then transferred to Meier.

Stripped of his shroud of verbiage, what defendant is saying is that his courier, Terri Trevillion, who went to Mexico at his instance, forged the documents, because no one else but Miss Trevillion and himself had access to the documents and the self-advancing stamp and the H.H. stamp and the invisible ink.

It should be observed however that defendant was not charged with forgery.

He was charged and stands convicted of obstructing justice by submitting two documents that he *knew* to be forged in the seven million dollar civil case in which he was a party defendant.

The jury in this case was instructed that they were the "exclusive judges of the facts." The jury made their factual determinations.

The jury was charged that they could judge the credibility of the witnesses presented. They made their determination of credibility.

The credibility of Terri Trevillion was considered by the jury. Defendant had am-

ple opportunity to cross examine Ms. Trevillion concerning any and all of the documents. Defendant was the one person who could from his own knowledge bring into conflict—if conflict there be—the testimony of his own courier. He elected not to do so, as was his right.

Who, other than the defendant was intimately familiar with the details of his own lawsuit?

Who, other than the defendant was familiar with the personnel of the Hughes entourage, such as Levar Myler.

Who, other than the defendant, of the two persons who had intimate contact with the Hughes documents, had anything at all to gain from their use in his lawsuit?

Who initiated the effort to obtain copies of the last two years of the Hughes papers?

After again reviewing the five volumes of testimony in the case and the multitude of exhibits, I have concluded that the evidence allegedly "newly discovered" is not new, was in no sense "withheld" by the United States, and if material at all is but cumulative and impeaching, and in my opinion if it had been available and used, it would have had no significant effect—indeed no effect at all—upon the outcome of this case.

The motion for a new trial is denied.